IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NUMBER |
| | § | |
| SAN BENITO HEALTHCARE 1, LLC | § | 05-11412 |
| | § | |
| DEBTOR (S) | § | CHAPTER 11 |

DISCLOSURE STATEMENT

I.      INTRODUCTION.

SAN BENITO HEALTHCARE 1, LLC, (hereinafter referred to as "Debtor"), filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code of 1978, as amended, 11 U.S.C. §101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division (the "Bankruptcy Court") on October 7, 2005, the ("Petition Date").  Since that time, the Debtor has continued to operate as Debtor-in-Possession pursuant to the provisions of Section 1108 of the Bankruptcy Code.

The purpose of this Disclosure Statement is to provide the creditors and parties-in-interest adequate information to make an informed judgment about the Plan of Reorganization (the reference for all purposes.)  Generally, this information includes, among other matters, a brief history of the Debtor, the Chapter 11 case, a description of the remaining assets and liabilities of the Debtor, an explanation of why the reorganization of this Debtor under the proposed Plan would result in a greater benefit to the creditors than if the Chapter 11 case was converted to a Chapter 7 case and a Chapter 7 Trustee was appointed.  To make an informed judgment about the Plan, you are urged to read the entire Disclosure Statement and Plan.  Capitalized terms used but not defined in this Disclosure Statement are defined in the Plan.

1

A.  Representations.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS ASSETS) ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR, RICHARD S. HOFFMAN, ATTORNEY AT LAW, 500 W. 16TH ST, SUITE 103, AUSTIN, TX 78701, WHO SHALL DELIVER SUCH INFORMATION TO THE HONORABLE RICHARD SCHMIDT, UNITED STATES BANKRUPTCY JUDGE, WHO MAY TAKE SUCH ACTION AS HE DEEMS APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED EXCEPT AS SPECIFICALLY REFERENCED HEREIN.  THE RECORDS KEPT BY DEBTOR RELY FOR THEIR ACCURACY UPON BOOKKEEPING PERFORMED BOTH INTERNALLY AND BY OUTSIDE SOURCES.  FOR THIS REASON, THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED

HEREIN IS CORRECT ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO BE ACCURATE.  THIS DISCLOSURE STATEMENT CONTAINS ONLY A BRIEF SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY THE TERMS AND PROVISIONS FOR THE PLAN.  EACH CREDITOR, INTEREST HOLDER, AND PARTY-IN-INTEREST IS URGED TO REVIEW THE PLAN IN FULL PRIOR TO VOTING ON THE PLAN TO INSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS, INTEREST HOLDERS, AND PARTIES-IN-INTEREST TO MAKE AN INFORMED DECISION ABOUT THE PLAN.

B.  Explanation of Chapter 11.

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, an attempt is made to restructure a business debtor's finances so that the Debtor may both continue to operate the enterprise, create income, and repay its creditors.  Formulation of the Plan of Reorganization is the primary purpose of a reorganization proceeding under Ch. 11.

The Chapter 11 Plan sets forth and governs the treatment and rights to be afforded to creditors and equity security interest holders with respect to their claim against, and interest in, the Debtor.  According to Section 1125 of the Bankruptcy Code, acceptances of a Chapter 11 Plan may be solicited by the Debtor only after a written disclosure statement approved by the Bankruptcy Court and containing adequate information has been provided to each creditor or equity security holder.  This Disclosure Statement is presented to creditors and interest holders to satisfy the disclosure requirements in section 1125 of the Bankruptcy Code.

II.  INFORMATION CONCERNING THE DEBTOR.

A.  <u>History of the Debtor.</u>

Dolly Vinsant Memorial Hospital was established in 1949, and has served San Benito and the surrounding communities for over half a century. A full service, acute care facility, Dolly Vinsant Memorial Hospital provides emergent, inpatient and surgical services to age populations of two months to geriatric. Full laboratory, radiology, pharmacy and cardiopulmonary ancillary services compliment the inpatient and outpatient provision of services.

B.  Result of Operations of Debtor-in-Possession.

The operations of the facility are essential to provide a local source of primary healthcare to San Benito and the surrounding communities. The hospital is the sole inpatient care provision in the city for emergency care and inpatient medical-surgical treatment.

C.  Estimated Future Income of the Debtor.

| Proj Revenue | 2005 | 2006 |
|---|---|---|
| January | 1,435,943.07 | 1,579,537.38 |
| February | 1,566,872.59 | 1,723,559.85 |
| March | 1,287,953.88 | 1,416,749.27 |
| April | 1,134,460.03 | 1,247,906.03 |
| May | 1,153,075.46 | 1,268,383.01 |
| June | 1,028,172.26 | 1,130,989.49 |
| July | 1,064,315.80 | 1,170,747.38 |
| August | 1,202,529.55 | 1,322,782.51 |
| September | 1,436,308.84 | 1,579,939.72 |
| October | 1,342,950.05 | 1,477,245.06 |
| November | 1,699,529.54 | 1,869,482.49 |
| December | 1,781,725.24 | 1,959,897.76 |

III.  ANALYSIS AND VALUATION OF PROPERTY.

A.  Real Property.

4

Business property;………………………………$0

TOTAL REAL PROPERTY VALUE…………………..………………………..$0

B.  Personal Property

1.      Equipment, Fixtures, Furnishings,

      a.  Movable Equipment             $804,316.00
      b.  Less Accumulated Depreciation    -$564,631.00

      *Total Equipment, Fixtures, Furnishings,*     *$239,685.00*

2.      Inventory

      a.  Inventory               $372,985.00

      *Total Inventory*           *$372,985.00*

3.  Cash on Hand.

      No Cash               $0

      *Total cash on hand*           *$0*

4.  Funds in Debtor in Possession Checking Accounts.

      a. Chase Accounts Payable      $61,920.86
      as of 12/30/05 (reconciled)

      b. Chase Payroll          $ 4,552.06
      as of 12/30/05 (reconciled)

      *Total Monthly Checking Accounts*     *$66,472.92*

5.  Security Deposit.

      None

      *Total Security Deposits*         *$ 0*

6.  All Other Property Not Already Listed.

      Monthly Account Receivable      $509,289.00

Total Property not listed $509,289.00

TOTAL PERSONAL PROPERTY VALUE………………………………..$0

TOTAL ASSETS………………………………………………………$1,188,431.92

This value should not be construed to represent the value of such property if it were sold at auction or at forced sale prices but is rather its true market value if the Debtor was allowed to sell such property in the ordinary course of business on the open market. For a more detailed analysis of the value of such property under differing circumstances, please refer to paragraph IV, the liquidation analysis below.

## IV. LIQUIDATION ANALYSIS. –

A. The assets which total $1,188,431.92 consist of the following:

Real Property……………………………………………$0

Personal Property……………………………………...$1,188,431.92

Total………………………………………………………………$1,188,431.92

For the purposes of adequately informing its creditors of the liquidation value of its assets, the Debtor estimates that if it were forced to liquidate as it would in a Chapter 7 proceeding that the value of its total net assets (currently $1,188,431.92) would be reduced by as much as fifty percent (50%), or ($594,215.95) in light of the economic conditions of the Rio Grande Valley, and the particular use for which the property is designed.

The Debtor further estimates, that the liquidated sums would pay administrative claims priority claims, and only a portion of secured claims.

## V. THE DEBTOR'S PLAN OF REORGANIZATION

A. Classification of Classes Under the Plan.

Class 1: Priority Claims

6

Class 2:          Secured Claims

Class 3:          Secured Ad Valorem Tax Claims

Class 4:          Unsecured Priority Tax Claims

Class 5:          Unsecured Claims

Class 6:          Equity Security Holders

Class 1. Priority Claims

The Bankruptcy Code requires more favorable treatment of administrative and priority claims. The valid administrative claims (professional fees, including appraiser's fees, trustee's fees, costs of administration) are approximately $5,000.00 at this time. There are two (2) known members of this class at this time as follows:

     1.          Richard S. Hoffman (Attorney for Debtor)……………………..…..$ 10,839.00

     2.          United States Trustee (Quarterly Fees)...............................($5000 x 4) $20,000.00

It should be known that a partial provision has been made for the payment of the Debtor-In-Possession's attorney fees by the depositing of a retainer in the amount of $6,161.00 (after having paid $839.00 for filing fees) with the attorney for the Debtor-In-Possession. The amount of the attorney fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred as attorney fees in the Chapter 11 proceeding. A final determination of such amount cannot be made until such time as the case is closed, but it is not expected to exceed $15,000.00. *Richard S. Hoffman will receive $1,000.00 per month beginning April 1, 2006 and continuing on the first of every month until paid.*

The Debtor shall, on or before the day of Confirmation, pay to the United States Trustee, all quarterly fees due and owing, if any, on the date of confirmation by certified funds.

A quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in

7

each case under chapter 11 of title 11 for each quarter (including any fraction thereof, and including post confirmation) until the case is converted or dismissed, whichever occurs first. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.  Debtor will file all monthly operating reports.

Class 1 claims will not be impaired.

Class 2.  Secured Claims

The Class 2 Claimants consist of Creditors with Secured Claims.  To the best of the Debtor's knowledge, there are no known members of this Class.

Class 3.  Secured Ad Valorem Tax Claims

The Class 4 Claimants consist of creditors with secured ad valorem tax claims.  To the best of the Debtor's knowledge, information and belief, there are two (2) known members of this Class as follows:

1.  San Benito CISD……………………………………………………$212,965.67

2.  Cameron County……………………………………………………$148,155.20

The Class 3 Creditors mentioned hereinabove will be paid one hundred percent (100%) of their claims.  These creditors shall be paid interest at the rate of 8% and will share in a pro-rata distribution of $3,500.00 per month for thirty (30) months beginning one month after confirmation and $10,000.00 a month on month thirty-one (31) until month sixty (60).

Class 4.  Unsecured Priority Tax Claims

The Class 4 Creditors consist of claims such as taxes and Certain Other Debts Owed to

the Government.  To the best of the Debtor's knowledge, information and belief, there is one (1) known member of this Class as follows:

    1. Internal Revenue Service…………………………………………………$949,171.12

The Class 4 Creditor mentioned hereinabove will be paid one hundred percent (100%) of its claim.

These creditors shall be paid interest at the rate of 8% and will receive a payment of $5,000.00 per month for twelve (12) months beginning one month after confirmation, and $7,500.00 from month 13 to 24, $10,000.00 a month from months 25 to 36, $20,000.00 a month from months 37 to 48 and $35,000.00 a month from months 49 to 60.

      The debt owed by the debtor to the IRS is a nondischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the debtor should default, the IRS can take whatever actions are necessary to collect said debt in the event of default.  Confirmation of this plan provides that the collection statue is tolled [by way of the automatic stay remaining in effect as to the debt of the IRS] until the IRS is paid under the provisions of the plan or the plan is declared in default under the terms of the default provisions.

Failure by the debtor to make a payment to the IRS is an event of default; as to the IRS, there is an event of default if payment is not received by the 15th day of each month; if there is fifteen (15) days of the date of the demand letter, the debtor can receive up to five (5) notices of default from the IRS, however, on the fifth (5th) notice of default from the IRS, the fifth (5th) default cannot be cured, and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing, and pursue any and all available state and federal rights and remedies.  These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority and unsecured general.

The IRS is bound by provisions of the confirmed plan and is barred under 11 U.S.C §1141 from taking any collection against the debtor for pre-petition claims during the duration of the plan (provided there is no default as to the IRS).  The period of limitations on collection remains suspended under 26 U.S.C  §6503 (h) for tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the IRS have been made; or, (2) thirty (30) days after the date of the demand letter (describe above) for which the debtor failed to cure the default.

A failure by the reorganized Debtor to make a payment to tax claimants pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) days after receipt of written notice of default from a tax claimant, then the tax claimant may; (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies such tax claimant may have under the applicable state law; and/or (c) seek such relief as may be appropriate in this court.

Class 5.  Unsecured Claims

The Class 5 Creditors consist of unsecured claims. To the best of the Debtor's knowledge, information and belief, there are approximately 826 known members of this class.

The Class 5 creditors will receive 50% of their claims. Payments will begin one month after confirmation and continue on the same day of the month until their claims are paid.  It is difficult to estimate the payment amount but debtor anticipates being able to pay all filed claims at the expiration of 60 months.  All creditors will be paid upon liquidation of the stockholders' other properties.  **All Class  5 creditors who do not file proof of claims shall not participate in the pro-rata distribution of funds. The deadline to file claims is February 28, 2006 (Court's Order).**

Class 5 Creditors are not impaired.

Class 6.  Equity Security Holders

Class 6 consists of the claims of the equity security holders, Ambulatory Management Services, LLC, Leslie Bingham – Escareno, Timothy Rogler-Brown.

The equity security holders mentioned hereinabove shall retain their interest in the reorganization and shall continue with the operations of.

A.  Management Plan of Reorganization

- Restructure of Emergency Services provider and admission processes to net a increase in patient volumes projected at 30%

- Evaluation of procedural pricing, room rates to provide a 40% increase in patient charges and a resultant 30% increase in reimbursements

- Departmental analysis of service lines for evaluation on profitability – non-profitable services deleted (mammography); transcription services, etc.

- 10% Manpower reduction in full time employees

- Evaluation of managed care contracts for profitability – discontinuation of contracts yielding reimbursements below cost

- Marketing and networking with orthopedic surgeons, implementation of orthopedic service line with projected increase in orthopedic cases to result in approximately $40,000 profit increase monthly.

B.  Risks to Creditors Under the Debtor's Plan.

The principal risk that the Creditors will incur under the Debtor's Plan is the possibility that the stockholders will not be able to sell the unencumbered properties.  At this time however, the Debtor believes that this liquidation Plan is feasible.  Debtor assumes that is unlikely that its

revenues will decrease or that expenses will increase by more than five percent per year.  The Debtor believes that if this Plan is confirmed, that all creditors will receive more than they would under a Chapter 7 liquidation.

## VI.  GENERAL INFORMATION ABOUT THE CLAIMS PROCEDURE.

### A.  Procedures for Resolving Contested Claims.

The Debtor in Possession, or any party in interest, may file with the Bankruptcy Court an objection to the proofs of claim filed by any party or claimant.  Any objection must be made in writing, must set out the name of the Creditor or Interest Holder who filed the claim, the dollar amount for the claim and the type of claim.  Each specific ground for objection to the claim shall be listed in a separate paragraph.  A copy of the objection shall be made upon the attorney of record for the claimant, Richard S. Hoffman, by serving a true and correct copy of the objection and shall be deemed complete upon mailing as set out in Bankruptcy Rule 9006(e).  A certificate of service shall promptly be attached to each objection and shall comply with Local Bankruptcy Rule 9013(f).

If an objection to a claim is filed, the Creditor shall file a response to any such objection within twenty days from the mailing date set out in the certificate of service for the objection. Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the thirty day period, the Court may enter an order without further notice of hearing.

### B.  Pending Litigation, Actions Pertaining to Fraudulent Transfers, Voidable Preferences, and Equitable Subordination.

The Debtor is not a party to any pending litigation.  The Debtor is unaware of any potential recovery that might be ascertained as a result of voidable transfers.

## VII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.

The implementation of the Plan will have significant federal income tax consequences with respect to the Creditors, partners of the Debtor, and the Debtor. The following discussion summarizes such federal income tax consequences based the Internal Revenue Code of 1986, as amended and the Treasury Regulations promulgated thereunder.

The Plan and its related tax consequences are complex. Treasury Regulations have not yet been promulgated with respect to many of the substantive provisions of the Tax Code that have been amended by legislation in recent years. The Debtor has not requested a ruling from the Internal Revenue Service, nor has it obtained an opinion of counsel. Accordingly, no assurance can be given as to the interpretation that the Internal Revenue Service will adopt. Further, the federal income tax consequences to any particular Creditor, Investor, and the Debtor may be affected by matters not discussed below. There also may be state or local taxes considerations applicable to each Creditor or Investor. THE DISCUSSION SET FORTH BELOW IS INCLUDED FOR GENERAL INFORMATION ONLY. BECAUSE THE TAX CONSEQUENCES OF THE PLAN MAY VARY DEPENDING UPON INDIVIDUAL CIRCUMSTANCES, EACH CREDITOR AND INVESTOR IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN UNDER APPLICABLE, FEDERAL, STATE, AND LOCAL TAX LAWS.

A.  Federal Income Tax Consequences to Creditors.

The federal income tax consequences of the implementation of the Plan to a Creditor will depend in part on whether, for federal income tax purposes, the obligation from which a Creditor's Claim arose constitutes a "security". The determination as to whether an obligation from which a Creditors Claim arose constitutes a "security" for federal income tax purposes is complex. It depends on the facts and the circumstances surrounding the origin and nature of the

obligation.   Generally, corporate debt obligations evidence by written instruments with maturities, when issued, of five years or less, or arising out of the extension of trade credit, do not constitute "securities".   Although it appears that most of the Creditors Claims do not constitute "securities," the Debtor expresses no views with respect to whether the obligations from which a particular Creditor's Claim arose constitutes a "security" for federal income tax purposes.   Creditors are urged to consult their own tax advisors in this regard.

Exchange by Creditors whose Claims arise from obligation that do not constitute "securities" or whose Claims are of wager or service, will be fully taxable exchanges for federal tax purposes.   Such Creditors who receive solely cash in discharge of their Claims, will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the Creditor in respect of its Claim (other than any Claim for accrued interest) and (ii) the Creditor's tax basis in its Claim for accrued interest) and (ii) the Creditor's tax basis in its Claim (other than any Claim for accrued interest).   For federal income tax purposes, the "amount realized" by a Creditor who received solely cash in discharge of its Claim will be the amount of cash received by such Creditor.

Where gain or loss is recognized by a Creditor, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Creditor, whether the obligation from which a claim arose has been held for more than six months, and whether and to what extent the Creditor has previously claimed a bad debt deduction.   The capital gains deductions for individuals and the alternate tax for corporate net capital gain has been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates.   However, the definitions of long term and short term capital gain or loss have not been repealed.

To the extent any amount received (whether cash or other property) by a Creditor is received in discharge of interest accrued on its Claim during its holding period, such amount will be taxable to the Creditor as interest income (if not previously included in the Creditor's gross income).  Conversely, a Creditor will recognize a deductible loss (or, possible, a write-off against a reserve for bad debts) to the extent any interest accrued on its Claim was previously included in the Creditor's gross income and is not paid in full.

B.  Federal Income Tax Consequences to Equity Security Holders.

No attempt has been made in this Disclosure Statement to examine all of the possible tax consequences of the Plan with respect to Equity Security Holders.  Federal Income taxes of the Plan, a substantial amount of the aggregate principal and accrued interest in the Debtor's outstanding indebtedness may be discharged without payment.  In general, the Tax Code provides that a taxpayer that realizes a "discharge of indebtedness" must include such discharge of indebtedness, i.e., the amount by which the indebtedness discharged exceeds any consideration given for discharge, in gross income.  To the extent any indebtedness is discharged, the Equity Security Holders may be required to include such amounts in income, subject to certain exceptions.

The tax consequences of discharge of indebtedness to an Equity Security Holder are complex and will be dealt with in further detail in Disclosure Statement.  Equity Security Holders, are, therefore, urged to consult their individual tax advisors as to the tax consequences of discharge, as well as any other tax consequences which result from the implementation of the Plan.

VIII.  Non-Bankruptcy Litigation.

The Debtor is unaware of any possible non-bankruptcy related litigation it might have

endured if it had not filed for relief under Chapter 11 of Title 11, United States Code.

IX.   Summary of Significant Orders.

The significant orders entered by the Court in this case are as follows:

1.   Ordered: Last day to oppose discharge or dischargeability is January 30, 2006

2.   Ordered: Last day to file claims if February 28, 2006.

3.   Order granting employment of Attorney – November 29, 2005.

4.   Order granting employment of Accountant – November 29, 2005.

X.  Confirmation of the Debtor's Plan.

A.  Voting Procedures and Requirements.

Ballots and Voting Deadline

In addition to this Disclosure Statement and a copy of the Plan, each Creditor entitled to vote will hereafter be provided with a ballot to be used for voting to accept or reject the Plan, together with a postage paid return envelope.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Bankruptcy Court prior to the hearing before the Bankruptcy Court requiring its approval of the Plan or at such other time as the Bankruptcy Court may set.  The time and date of the hearing will be set forth in a notice to the Creditors.

Whether or not the Creditor entitled to vote expects to be present as the hearing, each Creditor is urged to complete, date, sign and properly mail the ballot to the following address:

United States Bankruptcy Court
1133 N. Shoreline Blvd, 2nd Floor
Corpus Christi, TX 78401

with a copy to Debtor's counsel:

Richard S. Hoffman
500 W. 16th St, Suite 103

16

Austin, TX 78701

Creditors Entitled to Vote.

Any creditor whose claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor (ad such claim not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of claim on or before the 1st date set by the Bankruptcy Court for such filings.  Any claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allowed the claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon the application by the Creditor. Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Bankruptcy Court.  A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejections was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

<u>Definition of Impairment</u>

Under Section 1124 of the Bankruptcy Code, a class of Claims or Equity Security interests is impaired under a Chapter 11 plan unless, with respect to each Claim or interest of such class, the Plan:

1.     Leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or Equity Security interest; or

2.     Notwithstanding any contractual provision or applicable law that entitles the holder of a Claim or Equity Security interest to receive accelerated payment of his Claim or equity Security Interests after the occurrence of a default:

   a.     Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;

17

b.      Reinstates the maturity of such Claim or Equity Security interest as it existed before the default;

c.      Compensates the holder of such claim or Equity Security interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

d.      Does not otherwise alter the legal, equitable, or contractual rights to which such claim or Equity Security interest entitles the holder of such claim or Equity Security interest; or

3.      Provides that, on the Plan Effective Date, the holder of such Claim or Equity Security Interest, received, on account of such Claim or Equity Security cash equal to:

a.      With respect to a Claim, the allowed amount of such claim; or

b.      With respect to an Equity Security interest, if applicable, the greater of:

(i)     Any applicable fixed liquidation preference; or

(ii)    Any fixed price at which the Debtor, under the terms of the security, may redeem the security.


Classes Impaired Under the Debtor's Plan.

The following classes or Claims are impaired under the Plan, and Creditors holding Claims in such classes are entitled to vote accept or reject the Plan:

Class 6

Vote Required for Class Acceptance

The Bankruptcy Code defines acceptance of a Plan by a class of Creditors or Equity Security interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or equity Security interests of that class which actually casts ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-six and two thirds percent (66-2/3) in amount of Claims and Equity Security interests voting in each class cast their ballots in favor of acceptance.

B.  IMPLEMENTATION OF THE PLAN

When the Plan is approved by the Bankruptcy Court, the Bankruptcy Judge will sign an Order Confirming Plan; however, the Debtor will continue to operate the estate and discharge its duties under the Bankruptcy Code until the effective date.  The effective date will be the date of confirmation.

Dated:   March 18, 2006     .

By:   /s/  Igor Kozlik                              .
        Igor Kozlik,  President


By:   /s/  Richard S Hoffman              .
        Richard S Hoffman
        State Bar No. 09787200, Fed ID 6147
        500 W. 16th St, Suite 103
        Austin, TX 78701
        512-322-9800
        512-322-9802 fax

        Attorney for Debtor